UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AKEEM ALEXANDER, )<br>JERRY ALEXANDER, and )<br>SUSIE ALEXANDER, )<br>) | <br><br><br>Case No. 3:05-0651 |
| Plaintiffs, ) | Judge Trauger |
| ) | |
| v. ) | |
| ) | |
| KAPPA ALPHA PSI ) | |
| FRATERNITY, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court are the Motions for Summary Judgment filed by the defendants, Kappa Alpha Psi Fraternity, Inc. ("Kappa") and Prentice "Jerry" Siegel ("Siegel") (Docket No. 48), as well as by the Nashville Alumni Chapter of Kappa Alpha Psi ("Alumni Chapter") (Docket No. 52). The plaintiffs have responded to these motions (Docket No. 57), and the defendants have replied (Docket No. 61).[1] For the reasons discussed herein, the defendants' motions will be denied in part and granted in part.

---

[1] Rather than filing its own response or other supporting materials, the Alumni Chapter relies on those of Kappa and Siegel. (*See* Docket No. 52 at 1.)

1

## FACTS AND PROCEDURAL HISTORY

Kappa is a national college fraternity that charters local chapters and approves for admission into those chapters undergraduates and alumni members.[2] In August 2003, Kappa member Sir Osei Smith met Javier Matlock. Matlock was wearing Kappa paraphernalia and told Smith that he had been inducted into Kappa in the spring of that year. Because Smith himself had been inducted at that time, during a process for which Matlock was not present, Smith came to believe that Matlock was a "perpetrator," *i.e.*, someone who "pretend[s] that [he is] within an organization, but in actuality, [he is] not]." (*See* Docket No. 62 at 11.)

According to the plaintiffs, Matlock's status as a potential perpetrator alerted Smith to the possibility of an underground pledging program at Fisk University, the school where Matlock was enrolled. Kappa has forbidden underground pledging, and the plaintiffs claim that it qualifies as hazing.

Pursuant to his Kappa-required duty to report "knowledge or suspected knowledge of hazing or underground pledging," Smith contacted Randall Madison, who was Senior Vice Province Polemarch and chairman of the Advisors Committee of Kappa's South Central Region. (*See id.* ¶ 21.) Madison, in turn, spoke to Siegel, who, as Province Polemarch for the same region, was responsible for all Kappa chapters within Kentucky, Tennessee, and northern Mississippi. Siegel then contacted Jim Murrell, a member of Kappa's Nashville Alumni Chapter, and asked him to investigate whether underground pledging was taking place at

---

[2]Unless otherwise noted, the facts have been drawn from the plaintiffs' Complaint (Docket No. 1) and their Response to [the Defendant's] Statement of Undisputed Facts (Docket No. 59), as well from the Response of Defendants Kappa Alpha Psi Fraternity, Inc. and Prentice "Jerry" Siegel to Plaintiffs' "Additional Statement of Material Facts" (Docket No. 62).

2

Kappa's Fisk chapter.

The plaintiffs maintain that Murrell, who was never trained in how to investigate allegations of hazing or underground pledging, conducted only a "cursory" examination of the activities at Kappa's Fisk chapter. (*See* Docket No. 62 ¶ 35.) Murrell ultimately reported to Siegel that he "couldn't find out anything." (*See id.* ¶ 41.)

In December 2003, Smith noticed Matlock at Kappa's regularly scheduled initiation program. Smith personally notified Siegel that Matlock was the alleged perpetrator whom Smith had reported earlier that year. According to the plaintiffs, "Siegel basically told Smith that there was nothing that could be done at that time." (*See id.* ¶ 44.) Three hours later, Siegel initiated Matlock into Kappa.

In September 2004, nineteen year-old Akeem Alexander, who is one of the plaintiffs in this case, began the process of joining Kappa's Fisk chapter via an underground pledge program that was led by Matlock. As an underground pledge, Alexander was ordered to procure food and alcohol for initiated Kappa members and made to do chores on their behalf. He was also required to submit to physical hazing sessions each night. Among other things, these sessions included beatings with a cane and a paddle. They sometimes lasted as long as three and one-half hours. The plaintiffs claim that Alexander was told that he would be subjected to public humiliation if he quit the underground pledge process and that quitting would mean that the other pledges would have to endure more abuse.

On September 13, 2004, a particularly violent hazing session left a deep laceration on Alexander's right buttocks and caused him a number of other injuries. He vomited three times the next day. Alexander informed Matlock of the vomiting and the laceration when he reported

3

for the September 14 hazing session, but, regardless, he was paddled and beat with a cane that night.

Alexander was still vomiting on September 15 when he had a friend drive him to the emergency room at Baptist Hospital. The doctors there diagnosed him with dehydration and severe lacerations of the buttocks. He remained hospitalized for five days, during which time Kappa members telephoned him with warnings not to reveal the source of his injuries.

The plaintiffs claim that, as a result of the hazing that Alexander endured, he was forced to withdraw from Fisk and drop the seventeen credit hours he was taking. Prior to the hazing, Alexander had maintained a 3.5 grade-point average. That average dropped below 3.3 "due to his injuries and hospitalization," which resulted in the loss of his full scholarship to Fisk. (*See* Docket No. 1 ¶ 58.)

All parties here recognize that Kappa has long-standing and explicit prohibitions against hazing. In particular, Kappa forbids the initiation of any pledge who has participated in an underground pledge process, and it requires the expulsion of any Kappa member who hazes others.

## **ANALYSIS**

I. **A genuine issue of material fact exists as to whether the defendants had a duty to prevent hazing-related injuries and whether the comparative negligence doctrine should bar the plaintiffs from recovery, but no such issue exists as to whether the plaintiffs are entitled to punitive damages.**

The defendants have moved for summary judgment on their claims that they had no duty to prevent hazing-related injuries, that the doctrine of comparative negligence should bar the plaintiffs from recovery, and that punitive damages are inappropriate in this case. For the

4

reasons discussed below, summary judgment will be denied on the first two claims and granted on the third.

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir.

5

1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the defendants' motions for summary judgment.

**B.    A genuine issue of material fact exists as to whether the defendants had a duty to prevent hazing-related injuries.**

As a preliminary matter, the court notes that the defendants base their motions for summary judgment primarily on their assertion that they had no duty to the plaintiffs. (*See, e.g.*, Docket No. 49 at 7). The defendants do not indicate, however, which of the plaintiffs' many claims require a showing of duty. Duty is not an element of every claim that the plaintiffs have asserted. (*See, e.g.*, Docket No. 1 at 21 (listing claims for battery and assault, which do not require a showing of duty).) Because a genuine issue of material fact exists as to whether the defendants owed a duty to the plaintiffs, the court need not determine which claims would fail

6

absent a showing of duty.

The parties did not cite–and the court's research did not reveal–any Tennessee precedent that addresses the duty of a fraternity's national headquarters to prevent hazing-related injuries to putative members who are pledging the fraternity ("pledges").  Courts outside this jurisdiction, however, recognize a distinction between headquarters that knew that hazing was taking place at the chapter where the injury occurred and those that did not.  For instance, the Supreme Court of Delaware upheld a jury's determination that a fraternity's national headquarters was not responsible for a pledge's hazing-related injury, where the chapter that conducted the hazing had recently certified to its headquarters that it did not haze and the headquarters was not in a position to know otherwise.  *See Furek v. Univ. of Del.*, 594 A.2d 506, 514 (Del. 1991).  Similarly, the Court of Appeal of Louisiana held that a fraternity's national headquarters had no duty to prevent hazing-related injuries to a pledge where the headquarters had no knowledge that hazing was occurring at the chapter in question and that chapter had endeavored to keep such activity a secret.  *See Walker v. Phi Beta Sigma Fraternity*, 706 So. 2d 525, 529-30 (La. Ct. App. 1997).

In contrast, two courts have found specifically that Kappa's national headquarters knew that hazing was taking place at particular chapters and, therefore, had a duty to protect the Kappa pledges in those chapters from related injuries.  *See Edwards v. Kappa Alpha Psi Fraternity*, No. 98-C-1755, 1999 WL 1069100, at *7 (N.D. Ill. Nov. 18, 1999); *Morrison v. Kappa Alpha Psi Fraternity*, 738 So. 2d 1105, 1118-19 (La. Ct. App. 1999).  In *Edwards*, the United States District Court for the Northern District of Illinois denied Kappa's motion for summary judgment on its claim that it had no duty to guard against the hazing of its pledges where a pledge sued the

7

fraternity for injuries that he sustained during an underground pledge process. *See Edwards*, 1999 WL 1069100, at *2, *7. In doing so, that court pointed to evidence that Kappa had failed to enforce its anti-hazing policies, even after it had been notified by the pledge that hazing was taking place. *See id.* at *5. Additionally, the Court of Appeal of Louisiana upheld a jury's determination that Kappa was responsible for hazing injuries caused to a pledge where "Kappa National was aware of prior hazing activity at [a particular Kappa chapter] and knew that their measures designed to protect against and prevent hazing did no such thing." *See Morrison*, 738 So. 2d at 1118. Both of these courts also noted that Kappa controlled the process by which new members joined its chapters and, as such, "may have possessed some control over its local members . . . ."[3] *See Edwards*, 1999 WL 1069100, at *6; *see also Morrison*, 738 So. 2d at 1118 (discussing testimony that Kappa "is, in a sense, responsible for all that goes on in its chapters, as it has the right to control intake, expel or suspend members, and revoke charters").

As in *Edwards* and *Morrison*, evidence in this case creates a genuine issue of material fact as to whether Kappa knew that hazing was taking place at its Fisk University chapter. Specifically, the defendants acknowledge that Siegel received information about the existence of an alleged "perpetrator," *i.e.*, someone who had not gone through approved channels in becoming a Kappa member, yet was claiming to be one and was wearing a Kappa jersey. The defendants seem to have been aware that this "perpetrator" may have joined Kappa via an underground pledge process because Siegel asked Murrell to investigate whether such pledging

---

[3]The Alumni Chapter may have a stronger argument as to its lack of duty to the plaintiffs because, unlike the other defendants here, it has no apparent ability to control Kappa's pledge intake process. However, the Alumni Chapter, in relying on the other defendants' supporting materials, has not advanced any such argument and, therefore, has not met its burden of proof on this issue.

8

was occurring at Fisk.

While the parties disagree about whether underground pledging qualifies as hazing, they both recognize that it is a forbidden practice done "in the darkness to defy its detection by those who are there to attempt to see them do things that are correct and approved and in an appropriate way." (*See* Docket No. 62 at 7.) As seen in other cases, underground pledging and hazing often go hand in hand. *See Edwards*, 1999 WL 1069100, at *2, *6; *Morrison*, 738 So. 2d at 1119. Given this information, a reasonable jury could conclude that Kappa was on notice that hazing may have been occurring at its Fisk chapter. As such, Kappa had a duty to prevent hazing-related injuries from taking place there.

If Kappa had a duty to prevent such injuries, a reasonable jury could also conclude that it breached it. The *Edwards* court came to the same conclusion, based on evidence that Kappa, when faced with allegations of underground pledging and related hazing at one of its chapters, failed to adequately investigate. *See Edwards*, 1999 WL 1069100, at *5. Here, Kappa delegated the task of investigating the alleged underground pledging to someone who–it admits–"was never trained in how to investigate allegations of hazing or underground pledging." (*See* Docket No. 62 ¶ 36.) Accordingly, a genuine issue of material fact exists as to whether Kappa breached its duty to prevent hazing-related injuries. Accordingly, summary judgment on the defendants' claim that they had no duty to the plaintiffs must be denied.

    **C.**    **A genuine issue of material fact exists as to whether the plaintiffs are entitled to damages under Tennessee's comparative negligence doctrine.**

The defendants have moved for summary judgment on their claim that the plaintiffs should not be able to recover damages because "Akeem Alexander's fault admittedly was equal to or greater than any of the defendants['']." (*See* Docket No. 49 at 11.) Under Tennessee law, a plaintiff is entitled to recover damages as long as his fault is less than the "combined fault of all tortfeasors." *See McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992). In other words, the plaintiffs here may recover damages as long as less than fifty percent of the fault for Akeem Alexander's injuries is attributed to Alexander himself. *See id.*

The defendants assert that Alexander's fault is equal to or greater than that of the defendants because he was warned about the "rough" nature of underground pledging and knew that he could quit the process at any time. (*See* Docket No. 49 at 12.) The plaintiffs argue that Alexander was unaware of the true nature of underground pledging and had been threatened with public humiliation and punishment to the remaining pledges were he to quit. (*See* Docket No. 57 at 20.)

Courts outside of Tennessee have apportioned fault in similar cases in a variety of ways. For instance, in *Morrison*, the court upheld a jury's equal distribution of fault for a pledge's hazing-related injuries among Kappa National, the university that housed the Kappa chapter in question, and the Kappa member who inflicted the pledge's injuries. *See Morrison*, 738 So. 2d at 1120. In *Furek*, the court rejected a defendant university's motion for a directed verdict on its claim that the plaintiff pledge's negligence contributed to his injuries such that he could not recover damages for injuries caused during hazing. *See Furek*, 594 A.2d at 523. Notably, neither court allocated any fault to the pledge who was hazed.

While a definitive finding of fault is inappropriate at this stage of the proceedings, a

10

reasonable jury could certainly label as less than fifty percent Mr. Alexander's portion of the fault for his injuries. Accordingly, summary judgment on this claim will be denied. *See McIntyre*, 833 S.W.2d at 58.

### D. Summary judgment will be granted in favor of the defendants on the plaintiffs' claims that punitive damages are appropriate in this case.

Finally, the three defendants here have moved for summary judgment on the plaintiffs' claims that they are entitled to punitive damages. (*See* Docket No. 49 at 13.) In Tennessee, a court may award punitive damages "only if it finds a defendant has acted either (1) intentionally, fraudulently, (3) maliciously, or (4) recklessly." *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

Here, the plaintiffs claim that the defendants "acted with recklessness" when Kappa National, "by and through Jerry Siegel, acted with reckless disregard for the rights of the plaintiff when they refused to investigate Javier Matlock in December 2003 and decided to initiate him into the Kappa Alpha Psi Fraternity in direct contravention of its policies." (*See* Docket No. 57 at 21-22.) A person acts recklessly when he "is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *See Hodges*, 833 S.W.2d at 901.

Two courts outside of Tennessee have determined that the plaintiffs in hazing-related cases were not entitled to punitive damages. In *Furek*, 594 A.2d at 523, the Supreme Court of Delaware found that, while a university defendant "might be faulted in terms of its failure to exercise greater control over a known hazardous activity [*i.e.*, hazing] . . . its response, which a

11

jury could deem ineffectual, was, nonetheless, well-intentioned and not characterized by a conscious disregard of a known risk." Similarly, the United States District Court for the Northern District of Illinois found "no evidence that suggests that Kappa acted in wanton disregard for the rights of others" when it failed to investigate a pledge's allegation of hazing and instead instructed the pledge to contact someone else about his complaints. *See Edwards*, 1999 WL 1069100, at *3, *5.

As in the cases above, a jury could not reasonably find here that the defendants' actions evince recklessness. Viewing the facts in the light most favorable to the plaintiffs, the defendants, at worst, delegated the investigation of alleged underground pledging to an untrained Kappa alumnus and initiated into Kappa someone who had been identified as a possible perpetrator. These actions, while certainly not ideal, do not reveal Kappa's reckless disregard of the risk of hazing. Indeed, Kappa took steps to investigate the potentially forbidden activity taking place in its Fisk chapter. While these steps may have been ineffectual, no genuine issue of material fact exists as to whether they qualify as a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. *See Hodges*, 833 S.W.2d at 901; *Furek*, 594 A.2d at 523. As such, the defendants' motion for summary judgment on this claim
will be granted.

## **CONCLUSION**

Genuine issues of material fact exist as to whether the defendants had a duty to prevent hazing-related injuries and whether the comparative negligence doctrine should bar the plaintiffs

12

from recovery. The defendants have, however, demonstrated that no jury could reasonably find that punitive damages are appropriate in this case. As such, summary judgment will be denied on the first two claims and granted on the third.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge